UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TIMOTHY JERIOD LEWIS JR., ) | Case No. CV 14-2017-SP |
| Petitioner, ) | |
| ) | MEMORANDUM OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS |
| v. ) | |
| M. BITER, Warden, ) | |
| Respondent. ) | |

## I.

## **INTRODUCTION**

On March 17, 2014, petitioner Timothy Jeriod Lewis Jr. filed a Petition for Writ of Habeas Corpus by a Person in State Custody ("Petition"). Petitioner challenges his 2011 conviction for carjacking in the Los Angeles County Superior Court.

Although presented as three grounds, the Petition effectively asserts one ground for relief: the trial court abused its discretion by prematurely giving the jury a supplemental instruction to break its deadlock that was unduly coercive and violated petitioner's due process right to an impartial jury, resulting in a miscarriage of justice and requiring reversal of petitioner's conviction.

For the reasons discussed below, petitioner's claim does not merit habeas relief. The Petition will therefore be denied.

## II.

## BACKGROUND[1]

### A. The Crime and Trial Evidence

On October 17, 2010, Angel Guerrero stepped out of his truck after parking it. He left the engine running because he intended to make a short stop. Guerrero was aware that he had almost run into a white car while he was backing up to park. The white car stopped, and a group of five or six people including petitioner got out and approached Guerrero while armed with hammers and metal rods. Guerrero believed they were going to attack him. Petitioner, who Guerrero believed had a hammer, got in the driver's seat of Guerrero's truck and drove away.

Guerrero, his brother, and a young friend named Adriana Castro pursued the truck in the brother's car. Castro called 9-1-1. Castro's testimony corroborated that of Guerrero.

Guerrero's truck, with petitioner at the wheel, was spotted by sheriff's deputies in a patrol car. When the officers made a U-turn in order to follow petitioner, he drove away at a high rate of speed. The deputies did not pull out their weapons, although one deputy later testified he did not recall if he drew a gun. After a short chase, petitioner crashed the truck into a fire hydrant. Petitioner got out and ran but was eventually taken into custody.

Petitioner testified that he alone approached Guerrero while unarmed after Guerrero hit the white car petitioner was traveling in. Guerrero got a machete from his truck and held it, causing petitioner to fear for his safety. Petitioner got

---

[1] The facts set forth are drawn largely verbatim from the California Court of Appeal's decision on direct appeal. Lodg. 6 at 2-7. Such statement of facts is presumed correct. 28 U.S.C. § 2254(e)(1); *Vasquez v. Kirkland*, 572 F.3d 1029, 1031 n.1 (9th Cir. 2009).

in Guerrero's truck and drove off in order to save himself. Petitioner did not stop for the deputies because one of them pulled a gun on him when the patrol car first passed him. Petitioner's testimony was supported by a friend who was in the white car with him and said that Guerrero pulled a machete on petitioner. In November 2010, petitioner's mother took photographs of the damage to the white car, and the photographs were shown to the jury.

**B.     Jury Deliberations**

At trial, shortly before the noon recess on June 21, 2011, the jury was ordered to begin deliberations. The jury returned at 1:30 p.m. and deliberated until court adjourned at 4:00 p.m. that day. Before the jury left for the day, the trial court answered the jury's query on the term "force or fear" in a manner agreed upon by all parties.

Deliberations resumed at 9:00 a.m. on June 22, 2011. At approximately 9:30 a.m., the jury asked to listen to the 9-1-1 recording again as well as the testimony of Adriana Castro. The jury also asked, "Does his failure to substantiate 'necesity' [sic] imply guilt?" The parties agreed that the court would play the recording and provide the readback as soon as the court became available. With respect to necessity, the court referred the jury to the instructions on carjacking and necessity. Because defense counsel was engaged in a hearing for a different case, the readback and playback were delayed. Before the jury heard the readback, they buzzed the court again and issued a note saying, "we are not able to make a decision, nine to three."

The trial court announced that it intended to read the jury an instruction from *People v. Moore*, 96 Cal. App. 4th 1105, 117 Cal Rptr. 2d 715 (2002), and it provided copies to the prosecutor and defense counsel. The trial court stated its decision was "based on the length of the evidence and the gaps and the fact that they requested readback and the 9-1-1 tape being played." Later, the court stated for the record that it did not believe the jury had been deliberating long enough.

1   Defense counsel objected to the reading of the instruction. She requested
2   the trial court to poll the jurors as to how many votes had been taken, remind them
3   of the length of their deliberations and that they had requested readback and the
4   9-1-1 call, and ask them whether they felt that further deliberations would change
5   anything. Defense counsel commented that the language of the instruction was "a
6   little bit overbearing." The prosecutor had no objection. The trial court noted the
7   objection by the defense and stated it would read the instruction and inform the
8   jury that at 1:45 that afternoon they would have the readback they requested.

**C.   The *Moore* Instruction[2]**

The *Moore* instruction was read as follows:

Ladies and Gentlemen, what I am going to do right now is I have further instructions and directions to give you as to the count in this case.

It has been my experience on more than one occasion that a jury which initially reported it was unable to reach a verdict was ultimately able to arrive at verdicts on one or more counts before it. To assist you in further deliberations, I'm going to further instruct you as follows.

Your goal as jurors should be to reach a fair and impartial verdict if you are able to do so based solely on the evidence presented and without regard for the consequences of your verdict regardless of how long it takes to do so.

It is your duty as jurors to carefully consider, weigh and evaluate all of the evidence presented at the trial, to discuss your views regarding the evidence and to listen to and consider the views of your fellow jurors.

In the course of your further deliberations, you should not hesitate to re-examine your own views or to request your fellow jurors to re-examine theirs. You should not hesitate to change your view you once held if you are convinced it

---

[2]   *See also* Lodg. 2 (Reporter's Transcript ("RT")) at 690-94.

4

is wrong or to suggest other jurors change their views if you are convinced they are wrong.

Fair and effective jury deliberations require a frank and forthright exchange of views.

As I previously instructed you, each of you must decide the case for yourself and you should do so only after a full and complete consideration of all the evidence with your fellow jurors. It is your duty as jurors to deliberate with the goal of arriving at a verdict on the charge if you can do so without violence to your individual judgment.

Both the People and the defendant are entitled to the individual judgment of each juror.

As I previously instructed you, you have the absolute discretion to conduct your deliberations in any way you deem appropriate. May I suggest that since you have not been able to arrive at a verdict using the methods that you have chosen, that you consider to change the methods you have been following, at least temporarily and try new methods.

For example, you may wish to consider having different jurors lead the discussions for a period of time or you may wish to experiment with reverse role playing by having those on one side of an issue present and argue the other side's position an [sic] vice versa. This might enable you to better understand the other's positions.

By suggesting you should consider changes in your methods of deliberations, I want to stress I am not dictating or instructing you as to how to conduct your deliberations. I merely find you may find it productive to do whatever is necessary to ensure each juror has a full and fair opportunity to express his or her views and consider and understand the views of the other jurors.

The integrity of a trial requires that all jurors at all times during the deliberations conduct themselves as required by these instructions.

The decision the jury renders must be based on the facts and the law. You must determine what facts have been proved from the evidence received in the trial and not from any other source. A fact is something proved by the evidence or by stipulation.

Second, you must apply the law I state to you to the facts as you determine them and in this way arrive at your verdict. You must accept and follow the law as I state it to you regardless of whether you agree with the law. If anything concerning the law said by the attorneys in their arguments or at any other time during the trial conflicts with my instructions on the law, you must follow my instructions.

The decisions you make in this case must be based on the evidence received in the trial and the instructions given by the court. These are the matters this instruction requires you to discuss for the purpose of reaching a verdict.

You should keep in mind the recommendations this instruction suggests when considering the additional instructions, comments and suggestions I have made in the instructions now presented to you. I hope my comments an [sic] suggestions may have been of some assistance to you.

You're ordered to continue your deliberations at this time. If you have other questions, concerns, requests or any communications you desire to report to me, please put those in writing on the form my bailiff has provided you with. Have them signed and dated by your foreperson and then please notify the bailiff.

**D.      Continued Deliberations and the Verdict**

After reading the *Moore* instruction, court recessed until 1:45 p.m. When the jury reassembled, the foreperson sent the trial court a written request for a readback of Guerrero's testimony as well.

At 2:00 p.m., the trial court played the 9-1-1 recording and then recessed for a short break. At that time, Juror No. 7 approached the bailiff to tell him he wanted to be excused for a "work hardship." The afternoon session continued

with the requested readback. After court was adjourned for the day, Juror No. 7 addressed the court. A self-employed truck driver, he complained he was unable to service his accounts. He asked at what point he could claim a hardship. The court told him he would not be discharged, but if deliberations continued through the following afternoon, the court would address the issue again.

Juror No. 10 was also waiting to speak with the court at that time. She told the court that she had asked to speak to the court because of her concerns with her student research. She had since spoken with her professor who said it was "fine." The court informed her that if by the end of the following day she still had concerns, the court would address the issue again.

Alternate Juror No. 2 then informed the court that he or she had a prepaid airplane flight for Friday (the next day being Thursday). The court asked the juror to bring some kind of verification and stated that, if there was an issue at the end of Thursday's session, the court would take it up again. Neither the prosecutor nor defense counsel had any comments on the court's discussions with the jurors.

On the following morning, the court announced that Juror No. 5 had telephoned to say he was unable to come to court because he had paralysis on one side. The court noted it had already made special accommodations for this juror due to his physical ailments and age. The trial court telephoned the juror by means of a speaker phone in the presence of counsel. The juror reported stiffness and difficulty in walking and said he needed to go to physical therapy that day, since he had missed several therapy appointments due to jury service. When asked if he had been able to listen and deliberate despite his condition, the juror replied that he had. The court asked the juror to postpone his therapy until the afternoon and to come to court. The juror agreed. Defense counsel was in agreement that the juror should be made to come to court.

The record shows that the jurors resumed their deliberations at 10:15 a.m. At approximately 10:35, the jury reached its guilty verdict.

## III.

## **PRIOR PROCEEDINGS**

Petitioner was charged in an information with one count of carjacking Angel Guerrero, and two counts of assault on a peace officer. Lodg. 1 (Clerk's Transcript ("CT")) at 114-18. His first trial ended in a mistrial, with the jury deadlocked 8-4 in favor of guilt on the carjacking count, and 8-4 in favor of acquittal on the assault counts. *Id.* at 304-05.

Prior to the second trial, the prosecutor dismissed the assault counts and so proceeded only on the carjacking count. *Id.* at 310; RT at 2. Following the second trial recounted above, on June 23, 2011, the jury found petitioner guilty of carjacking (Cal. Penal Code § 215(a)). CT at 369, 412. On July 8, 2011, the trial court sentenced petitioner to ten years in prison. *Id.* at 410-12.

Petitioner appealed his conviction to the California Court of Appeal. Lodg. 3. Petitioner argued the trial court abused its discretion by prematurely giving the jury a supplemental instruction to break its deadlock that was unduly coercive and violated petitioner's federal due process right to an impartial jury, resulting in a miscarriage of justice requiring reversal of petitioner's conviction. *Id.* On January 7, 2013, the Court of Appeal affirmed the conviction and judgment. Lodg. 6. Petitioner filed a petition for review, which the California Supreme Court denied without comment on March 20, 2013. Lodg. 7, 8.

## IV.

## **STANDARD OF REVIEW**

This case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). AEDPA provides that federal habeas relief "shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings *unless* the adjudication of the claim –

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme

Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2) (emphasis added).

In assessing whether a state court "unreasonably applied" Supreme Court law or "unreasonably determined" the facts, the federal court looks to the last reasoned state court decision as the basis for the state court's justification. *Robinson v. Ignacio*, 360 F.3d 1044, 1055 (9th Cir. 2004). Here, the California Court of Appeal's opinion on January 7, 2013 stands as the last reasoned decision on the claim raised in the Petition. *See Berghuis v. Thompkins*, 560 U.S. 370, 380, 130 S. Ct. 2250, 2259, 176 L. Ed. 2d 1098 (2010) (looking to the direct appeal as the last reasoned opinion); *Ylst v. Nunnemaker*, 501 U.S. 797, 803, 111 S. Ct. 2590, 115 L. Ed. 2d 706 (1991).

## V.

## DISCUSSION

As he did on direct appeal, petitioner here argues the *Moore* instruction was unduly coercive and violated his right to an impartial jury. Pet. at 5-6; Pet. Att. at 1-15. Respondent argues the California Court of Appeal reasonably rejected petitioner's claim and, to the extent the trial court may have erred, any such error was harmless. Answer at 5-16. The court agrees.

A. **The Court of Appeal's Decision Was Neither Contrary to Clearly Established Federal Law Nor an Unreasonable Determination of the Facts**

Federal law clearly establishes that every criminal defendant "being tried by a jury is entitled to the uncoerced verdict of that body." *Lowenfield v. Phelps*, 484 U.S. 231, 241, 108 S. Ct. 546, 98 L. Ed. 2d 568 (1988). "A supplemental jury charge to encourage a deadlocked jury to try to reach a verdict is not coercive per se." *Parker v. Small*, 665 F.3d 1143, 1147 (9th Cir. 2011) (*citing Allen v. U.S.*,

164 U.S. 492, 17 S. Ct. 154, 41 L. Ed. 528 (1896)). Every circuit has "upheld some form of a supplemental jury charge." *Lowenfield*, 484 U.S. at 238 n.1. Petitioner argues, given the timing of the verdict and jurors' requests to be excused, the *Moore* instruction improperly pressured jury members who previously held the minority opinion and coerced the jury as a whole to expeditiously return a unanimous verdict. Pet. Att. at 10-11. Petitioner contends the resulting miscarriage of justice requires a reversal of the jury's verdict. *Id.* at 12-15.

Normally, challenges to jury instructions given in state cases do not warrant federal habeas relief because they are matters of state law. *Estelle v. McGuire*, 502 U.S. 62, 71-72, 112 S. Ct. 475, 116 L. Ed. 2d 385 (1991). To obtain federal habeas relief for errors in the jury charge, a petitioner must show that "'the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process.'" *Id.* at 72 (quoting *Cupp v. Naughten*, 414 U.S. 141, 147, 94 S. Ct. 396, 38 L. Ed. 2d 368 (1993)) (other citations omitted). "[D]ue process does not require a new trial every time a juror has been placed in a potentially compromising situation." *Smith v. Phillips*, 455 U.S. 209, 217, 102 S. Ct. 940, 71 L. Ed. 2d 78 (1982). Due process entitles a defendant to "a jury capable and willing to decide the case solely on the evidence before it, and a trial judge ever watchful to prevent prejudicial occurrences and to determine the effect of such occurrences when they happen." *Id.*

"[W]hen faced with a claim of jury coercion, a reviewing Court must 'consider the supplemental charge given by the trial court "in its context and under all the circumstances."'" *Parker*, 665 F.3d at 1147 (quoting *Lowenfield*, 484 U.S. at 237) (other citation omitted). And faced with such a claim on federal habeas review, this court in turn must "ask (1) if the California Court of Appeal looked at the totality of the circumstances in determining whether the instruction given at [petitioner's] trial was coercive and (2) if its determination that it was not was

1  objectively reasonable." *Id.* at 1148. Here, the Court of Appeal reviewed the
2  totality of the circumstances and made a reasonable determination.

### 1. Content of the Instruction

As the Court of Appeal noted, the instruction provided by the trial court here was virtually identical to the instruction read to the *Moore* jury when it deadlocked after only one day of deliberation, and which was found to be not coercive. Lodg. 6 at 8; *see Moore*, 96 Cal. App. 4th at 1118-22. Respondent additionally argues the *Moore* instruction is far less problematic than the *Allen* instruction permitted in federal courts, which speaks specifically to jurors in the minority. Answer at 13, 15. In *Allen*, the Supreme Court found no error in a supplemental instruction to the jury that, inter alia, "if much the larger number were for conviction, a dissenting juror should consider whether his doubt was a reasonable one which made no impression upon the minds of so many men, equally honest, equally intelligent with himself." *Allen*, 164 U.S. at 501.

Although an *Allen* style instruction is disfavored in California courts, the comparison is instructive. *See Lowenfield*, 484 U.S. at 237-41 (comparing the Louisiana jury instruction provided by the trial judge to the federally approved *Allen* instruction in context of considering petitioner's writ of habeas corpus). Here, "the trial court never directed the jury that it must reach a verdict but stated it was each juror's responsibility to weigh and consider all the evidence at trial." Lodg. 6 at 9; *see* RT at 690-91. The instruction stated the jury's goal "was to reach a fair and impartial verdict if you are able to do so based solely on the evidence presented and without regard for the consequences of your verdict [or] regardless of how long it takes." Lodg. 6 at 8 (internal quotation marks omitted); *see* RT at 690. The jurors were warned not to do "violence to your individual judgment" in coming to a verdict. Lodg. 6 at 8 (internal quotation marks omitted); *see* RT at 691. After considering the wording of the instruction, the Court of

1  Appeal found it "'simply reminded the jurors of their duty to attempt to reach an
2  accommodation.'" *Id.* at 9 (quoting *Moore*, 96 Cal. App. 4th at 1121).
3      The Court of Appeal's analysis and findings were reasonable.  Moreover,
4  the terms of the instruction were certainly less coercive than the instruction in
5  *Allen*.  As such, the Court of Appeal's finding that the terms of the instruction
6  were not coercive was not contrary to clearly established federal law.

    **2.    Timing of the Instruction**

8      At the time the *Moore* instruction was provided, although the jury had been
9  deliberating for less than a full day, they had already announced they were dead-
10 locked at 9-3.  RT at 687-88.  The note announcing the deadlock came while the
11 jury's earlier requests to hear the 9-1-1 tape and have the testimony of Adriana
12 Castro read back were still pending.  RT at 686-87.  The trial court stated, "[b]ased
13 on the length of the evidence and the gaps [in deliberations] and the fact that [the
14 jury] requested readback and the 9-1-1- tape being played," the court's intention
15 was to provide the *Moore* instruction and let the jury know the 9-1-1 tape would
16 be played and Castro's testimony read back that afternoon.  RT at 688.
17 Petitioner's counsel argued against the instruction being given without first
18 polling the jurors as to whether they believe further deliberations would change
19 anything, and reminding the jury it had requested to re-hear testimony and the
20 9-1-1 tape.  RT at 688-89.  The judge noted the objection but reiterated his
21 intention to provide the instruction and then play the tape and have the readback.
22 RT at 689.  The jury was then brought in, given the *Moore* instruction, and
23 allowed to go to lunch.  RT at 690-94.
24     Before leaving for lunch, the foreperson indicated to the court that the jury
25 wanted to have additional testimony read back.  RT at 695.  After lunch, before
26 calling in the jury to begin playing the tape and reading back testimony, the judge
27 again put on the record that he believed the instruction was properly given because
28 he "[did] not believe they had been deliberating long enough," particularly in light

of the three separate requests, some before and some after they indicated they were deadlocked, to revisit testimony and evidence. RT at 699. The jury then came in and began with the 9-1-1 tape. RT at 700-01.

Petitioner argues that because the trial court gave the instruction immediately after the jury posed two questions to the court requesting to review essentially the entirety of the prosecution's case, rather than permitting the review of the evidence first, the judge unnecessarily coerced the jury into an expedited decision. Pet. Att. at 9-10. But the Court of Appeal found the jury's announcement of a deadlock prior to even hearing the requested readback of prosecution witness testimony and playback of the 9-1-1 call "indicative of a disorganized and impetuous approach," and showed the jury's "need of more guidance." Lodg. 6 at 9. The Court of Appeal found the instruction, as intended, "would have helped the jurors establish a rational and sober basis for decision-making that they could employ during and after the re-reading of the testimony and the re-playing of [the] 9-1-1 call." *Id.* This was a reasonable determination.

### 3. Vulnerability of Jurors

Petitioner argues several jurors were "particularly vulnerable" to coercion because they expressed concerns over the length of the trial. Pet. Att. at 11. Two jurors asked to be excused, and one had to be ordered to forego physical therapy and return to court to resume deliberations. *Id.* But as respondent notes, the *Moore* instruction was given by the court before any of these juror issues arose. Answer at 14; *see* RT at 690-94 (instruction given); RT at 702, 706-10, 712-18 (juror concerns raised). Additionally, the Court of Appeal addressed each juror's particular situation. Lodg. 6 at 9.

Juror No. 7 requested to be excused based on his "work hardship. RT at 702. He explained to the court that as a self-employed truck driver he would lose accounts if he was unable to service them. RT at 706. The court informed the juror he would not be discharged at that time, and requested he "be patient, give it

13

one more day and then we will hear you out again tomorrow if need be." *Id.* Juror No. 7 commented to the court that he tried to bring up his self-employment during the voir dire process. RT at 707. Thus, although Juror No. 7 was undoubtedly feeling time pressure throughout the trial, it was not particular to the deliberations. Moreover, having been assured by the court it would revisit his concerns if the deliberations continued at the end of the next day, his concerns should not have unduly pressured him to reach a verdict the next day. *See* Lodg. 6 at 9.

Juror No. 10 informed the court she was a student and had some concerns about her jury service interfering with her research, but she talked to her professor and he said she was "fine." RT at 708. Juror 10's issues were thus "resolved before she even spoke to the trial court." Lodg. 6 at 9.

Alternate Juror No. 2 stated he was scheduled to travel on Friday – not the next day, but the day following – and his plane ticket was pre-paid. RT at 709-10. The court requested the juror to bring documentation verifying his trip, and assured him the issue would be re-visited at the end of the day Thursday if the deliberations were then still ongoing. RT at 710. Thus, Alternate Juror No. 2 was not particularly vulnerable during deliberations.

Juror No. 5, who was elderly, suffered from physical ailments requiring accommodation during the trial. *See* RT 713. The morning of what turned out to be the final day of deliberations, Juror No. 5 telephoned and informed the court clerk he would be unable to attend due to paralysis on one side. RT at 712. The judge and counsel contacted the juror via telephone. RT at 714. On the record the Juror explained he had missed several physical therapy sessions due to the trial and had an appointment set for that morning. RT at 715. The court inquired whether the juror believed, if he attended court, he could sit and listen and participate in deliberations. *Id.* The juror stated he could. *Id.* The court asked the juror if he could reschedule his therapy for later in the afternoon and the juror stated he would try. RT at 716-17. With counsel in agreement, the court did not

release Juror No. 5 from duty. RT at 717-18. The court explained that he should try to reschedule his therapy and then come to court as quickly as possibly. *Id.* The Court of Appeal found "Juror No. 5 apparently did not appreciate the seriousness of his absence and readily agreed to come to court that day after speaking with the trial court." Lodg. 6 at 9.

The Court of Appeal considered each of these jurors' circumstances. It reasonably determined all the jurors who expressed concerns over the lengthiness of the trial "were clearly reassured that their concerns would be addressed," and none of these jurors "actually requested to be excused." Lodg. 6 at 9-10.

At first blush it may appear troubling that the jury reached a verdict only 15 minutes after Juror No. 5's arrival. *See* RT at 720. But this was the jury's first opportunity to deliberate again after, the day before, reporting a 9-3 deadlock, receiving the *Moore* instruction, and listening to the 9-1-1 tape and readback of testimony. The Court of Appeal reasoned the short deliberation supported the trial judge's assessment of the jury's need for guidance before giving the *Moore* instruction:

> Having listened to the readback and the 9-1-1 call, the jury members refreshed their respective memories as to the testimony. The jury's query as to defendant's "failure" to establish the defense of necessity suggests that the jury members had doubts as to defendant's credibility. Given these circumstances, we do not believe the short period of time of the final deliberation session proves that the jury was coerced.

Lodg. 6 at 10. On the contrary, the Court of Appeal found that, like in the *Moore* case, "'[t]he fact the jury was able to reach a verdict relatively quickly after being further instructed reflects the court properly exercised its discretion.'" *Id.* (quoting *Moore*, 96 Cal. App.4th at 1122). Again, this was a reasonable assessment.

**4.      Trial Court's Knowledge of the Jury Split**

In the instant case, the jury informed the court, without being prompted, that it was split 9-3. RT at 687. The Supreme Court has "condemned the practice of inquiring of a jury, unable to agree, the extent of its numerical division," to the point of "deem[ing] it essential to the fair and impartial conduct of the trial that the inquiry itself should be regarded as ground for reversal." *Brasfield v. U.S.*, 272 U.S. 448, 449-50, 47 S. Ct. 135, 71 L. Ed. 345 (1926). In this case, however, the court made no such inquiry. Furthermore, the *Lowenfield* Court determined the *Brasfield* decision, while "instructive as to the potential dangers of jury polling," was "an exercise of this Court's supervisory powers" with respect to federal trials, and not a constitutional ruling applicable to habeas review of state cases. *Lowenfield*, 484 U.S. at 240, n.3 ("The Federal Courts of Appeals have uniformly rejected the notion that *Brasfield*'s per se reversal approach must be followed when reviewing state proceedings on habeas corpus.") (citations omitted); *accord Locks v. Sumner*, 703 F.2d 403, 406-07 (9th Cir. 1983). Thus, federal law certainly does not require habeas relief where there was no inquiry that could have been perceived as coercive, but rather a voluntary proffering of information by the jury.

Nonetheless, in light of the potential for coercively singling out the minority, the Court of Appeal considered the judge's knowledge of the split among the jury. Lodg. 6 at 11. The court found the "methods suggested by the instruction applied to both minority and majority jurors and were intended to help both sides understand the other's view." *Id*. That the instructions might cause a juror to change his or her mind, the court reasoned, does not amount to coercion: "[p]ersuasion is not synonymous with coercion." *Id.*

"As long as the California Court of Appeal reviewed all the facts, and considered the supplemental charge in its context and under all the circumstances in holding that it was not coercive, then, in the absence of Supreme Court

authority to the contrary, this Court must give deference to the California Court of Appeal's judgment." *Parker*, 665 F.3d at 1148. As discussed, the Court of Appeal did all that here. It concluded there was "nothing coercive about the [trial] court's *Moore* instruction," which "did not put pressure on the minority jurors to agree with the majority opinion or suggest that failure to reach a verdict would necessarily result in a retrial." Lodg. 6 at 11. This was a reasonable determination entitled to this court's deference.

B. **The *Moore* Instruction, Even If Erroneously Presented, Did Not Constitute a Miscarriage of Justice**

Even if the *Moore* instruction could be deemed to have violated petitioner's right to due process, he can only obtain relief if the unconstitutional instruction had a substantial influence on his conviction such that it resulted in actual prejudice. *See Brecht v. Abrahamson*, 507 U.S. 619, 637, 113 S. Ct. 1710, 123 L. Ed. 2d 353 (1993). As discussed above, the *Moore* instruction, generally and as provided by the trial judge, stands up to constitutional scrutiny. Thus, any prejudice would lie in the timing of the instruction.

Petitioner argues, before giving the *Moore* instruction, the court should have permitted the jury to review the requested evidence in light of the answers the court provided to its specific questions, and thereafter determined if there still remained a feeling that further deliberation would be futile. Pet. Att. at 5, 9-10; *see* RT at 688-89. Petitioner does not argue that the instruction, if provided thereafter, would have been coercive.

Respondent argues the instruction was given under the least possible coercive circumstances: the jury had only deliberated for a short period; it had indicated its confusion by submitting questions seeking clarification from the court and requests to review substantial portions of the testimony; and none of its members had yet expressed a concern over the length of the proceedings. Answer at 14. The court agrees. Indeed, given the many hours that elapsed between the

giving of the *Moore* instruction and the jury's resumption of deliberations, including several hours during which testimony was read back, any coercive effect the instruction might have had would have dissipated.

Prior to revisiting the testimony, reminding the jurors of their "duty as jurors to carefully consider, weigh and evaluate all of the evidence presented at the trial, to discuss [their] views regarding the evidence and to listen to and consider the views of [their] fellow jurors," is not prejudicial. *See* RT at 690-91. Petitioner focuses on the direction to "reach a fair and impartial verdict if you are able to do so based solely on the evidence presented and without regard for the consequences of your verdict regardless of how long it takes to do so," however, this does not rise to the level of actual prejudice. *See* RT at 690; Pet. Att. at 9. The same instruction would not have been any more or less coercive if given to the jury after reviewing the testimony had they remained deadlocked. Thus, there was no prejudice to petitioner in the timing of the instruction.

For all these reasons, petitioner is not entitled to federal habeas relief.

## V.
## **CONCLUSION**

IT IS THEREFORE ORDERED that Judgment be entered denying the Petition and dismissing this action with prejudice.

DATED: July 20, 2016

SHERI PYM
United States Magistrate Judge